[Cite as *State v. Schilling*, 2025-Ohio-2160.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | | JUDGES: |
| | : | | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | | Hon. William B. Hoffman, J. |
| | : | | Hon. Andrew J. King, J. |
| -vs- | : | | |
| | : | | |
| NICHOLAS SCHILLING | : | | Case No. CT2024-0110 |
| | : | | |
| Defendant - Appellant | : | | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Muskingum County
                                Court of Common Pleas, Case No.
                                CR2024-0411


JUDGMENT:                       Affirmed


DATE OF JUDGMENT:               June 18, 2025


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOSEPH A. PALMER                      APRIL F. CAMPBELL
Assistant Prosecutor                  Campbell Law, LLC
27 North 5th Street                   6059 Frantz Road, Suite 206
Zanesville, Ohio 43701                Dublin, Ohio 43017

*Baldwin, P.J.*

**{¶1}** The appellant, Nicholas Schilling, appeals the September 13, 2024, conviction and sentence of the Muskingum County Court of Common Pleas. The appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND THE CASE

**{¶2}** On June 27, 2024, the Muskingum County Grand Jury indicted the appellant on one count of Possession of a Fentanyl-Related Compound in violation of R.C. 2925.11(A) with firearm and forfeiture of property specifications in violation of R.C. 2941.141(A) and 2941.1417(A), one count of Trafficking in a Fentanyl-Related Compound in violation of R.C. 2925.03(A)(2) with firearm and forfeiture of property specifications in violation of R.C. 2941.141(A) and 2941.1417(A), two counts of Aggravated Possession of Drugs in violation of R.C. 2925.11(A) with firearm and forfeiture of property specifications in violation of R.C. 2941.141(A) and 2941.1417(A), two counts of Aggravated Trafficking in Drugs in violation of R.C. 2925.03(A)(2) with firearm and forfeiture of property specifications in violation of R.C. 2941.141(A) and 2941.1417(A), one count of Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs in violation of R.C. 2925.041(A) with a forfeiture of property specification in violation of R.C. 2941.1417(A), two counts of Felonious Assault in violation of R.C. 2903.11(A)(1) and 2903.11(A)(2) with firearm specifications in violation of R.C.2941.145(A), two counts of Aggravated Robbery in violation of R.C. 2911.01(A)(1) and 2911.01(A)(3), and one count of Tampering with Evidence in violation of R.C. 2921.12(A)(1).

**{¶3}** On July 23, 2024, the matter proceeded to a bench trial.

**{¶4}** First, a neighbor of the appellant testified that she called police dispatch after hearing a commotion outside her house on May 12, 2024. Earlier in the day, the neighbor's daughter had yelled at an individual to stay out of their yard. The appellant spoke with the neighbor's daughter and apologized. He told her that if anyone had come from his house onto her property, he was sorry. He would ensure that no one visiting him would enter their yard in the future. The neighbor thought she heard the individual ask for help. She testified that she has cameras at her house, but to her knowledge, they do not record, and no video was saved. She did not see the appellant shoot anyone, she did not see anyone trafficking drugs, and she did not see anyone tamper with evidence.

**{¶5}** Next, Officer Gianettino testified that he works for the Zanesville Police Department. He was working on the evening of May 12, 2024, and the morning of May 13, 2024. On that evening, he received a call of shots fired at an address at Forest Avenue.

**{¶6}** Upon arriving at the address, Officer Gianettino searched the area, looking for indicators that a shooting occurred. After his search, he approached the residence and spoke with a bald man through a window. The man told him to come back with a warrant. The officer searched the area again but did not find any indication a shooting happened outside of the residence.

**{¶7}** Officer Stilwell then testified he also works for the Zanesville Police Department. He worked the night shift on May 12, 2024, and May 13, 2024. He also responded to Forest Avenue for the call of shots fired. Upon arriving, he searched for evidence of shots fired and did not find anything. Upon approaching the residence, he noticed a vehicle with two occupants parked in front of the residence. He ran the

identification of one of the occupants. Officers searched the vehicle upon receiving consent but did not find any contraband.

{¶8}   Next, a friend of the victim, who was living with the victim's mother, said she was asleep on the couch when the victim came running in, screaming that Nick had shot him. This occurred between midnight and six a.m. After coming awake, she saw the victim covered in blood with a bullet hole in his back.

{¶9}   Next, Jason Emory testified that he would go to the residence on Forest Avenue to obtain drugs, specifically methamphetamine. When he would visit, he would interact with the appellant. The evening of the shooting, he was sitting in the alley by the house when the shooting occurred. He had gone to the residence to obtain drugs but did not because he thought there was a fight. Mr. Emory began to leave the scene.

{¶10}  While sitting in his vehicle in the alley, Mr. Emory received a phone call from the appellant. The appellant asked him to return to the house to help him. The police officers arrived on the scene while Mr. Emory was still in his car, parked in front of the house. The officers searched his vehicle but did not find any contraband. Mr. Emory spoke to the appellant later that morning. The appellant said that he had a fight and believed he shot someone. Mr. Emory suggested using a blacklight to see any blood, but they could not see any.

{¶11}  The appellant's girlfriend then testified she was at the Forest Avenue residence on May 12, 2024. She testified that this was the appellant's residence, where she was staying with the appellant, as she was avoiding a warrant in Licking County. At the time, she was using fentanyl and methamphetamines. The fentanyl she obtained from

the appellant was in the form of a pink pill. She further testified the appellant would cut the fentanyl to dilute it to stop his customers from overdosing.

{¶12} She also testified that she was in the residence when she heard the gun go off. Before the gun went off, she said she heard the victim banging on the front and back doors and yelling for about an hour. The victim entered the house against the appellant's wishes. The appellant asked him to leave several times. The victim refused. The victim threatened the appellant, and the appellant came out of the bedroom. The appellant threatened to hit or smack the appellant. The appellant's girlfriend then heard the gunshot and then heard someone take off through the backdoor. She then came downstairs and looked out the back. She saw blood spots and saw the appellant cleaning up blood spots.

{¶13} Next, Detective Michael Patrick testified he was called to the appellant's residence to investigate. In addition to the shots fired call on May 12th and 13th, Detective Patrick said they had numerous complaints of suspected drug activity. Law enforcement obtained a warrant for the residence, and Detective Patrick participated in the search.

{¶14} Detective Patrick testified to what law enforcement found at the residence during the search:

- a shotgun in the master bedroom;

- a functioning handgun in the same bedroom;

- a Nike bag containing a loaded 9mm magazine, a bag full of coins, baggies containing pills and a crystalized substance, a Samsung cell phone, a visa card with the name W.C., and a debit card of an E.S.;

- a container with pipes and a razor blade in it found in the master bedroom;

- miscellaneous drug paraphernalia found in the office;

- various caliber of bullets around the house;

- a medicine bottle containing suboxone strips in the office;

- a digital scale in the office;

- various gun parts and magazines in the office;

- a baggie of pink powder;

- a digital camera in the office;

- several DVR systems hooked to monitors in the office;

- drops of blood throughout the residence;

- U.S. currency in the safe;

- a 9mm inside a purse in the front room;

- drug paraphernalia on the coffee table;

- three pills in the downstairs bedroom;

- a medication bottle with the appellant's name on it found in the master bedroom;

- a pole traditionally utilized for pole dancing with a note at the bottom of it that said "Sluts only per Nick" in the master bedroom; and

- a couple machetes in the closet.

**{¶15}** Next, Kylie Merry testified that she works at a hospital in Zanesville as a nurse specializing in trauma and acute care surgery. Nurse Merry sat in on the treatment of the appellant's gunshot victim on May 14, 2024. The medical records show that the victim was transported to the hospital with a gunshot wound that took place two days prior.

{¶16} Ashley Nutter then testified that she is a forensic scientist at the Central Ohio Regional Crime Lab. She tested the substances found by law enforcement at the appellant's residence. The results showed that the suspected controlled substances were fentanyl, methamphetamine, and methylphenidate.

{¶17} The last witness to testify was Detective Chris Andrews. Detective Andrews testified he works as a detective for the City of Zanesville. His sergeant assigned him this case on May 13, 2024. Detective Andrews reviewed the 9-1-1 calls and sent detectives to the residence where the calls originated, the appellant's neighbor. The neighbor was uncooperative with the police and would not release any videos they may have had.

{¶18} After filing for a search warrant for the appellant's residence, the officers served the warrant on May 14, 2024, looking for a firearm or evidence of felonious assault. Detective Andrews noted the first upstairs bedroom was set up like an office. He observed drug paraphernalia, a pink powder, and scales. At this point, the detective filed for a second search warrant related to drug offenses.

{¶19} After law enforcement received information about where the shooting victim was located, they went to that address to find him. Law enforcement received consent to search, both from the property owner and current occupant living in the basement. In the basement, law enforcement collected bloody jeans, a grey sheet covered in blood, a brown sheet covered in blood, a box cutter, and identification for the victim. The victim was not present at the residence. Law enforcement received a call that the victim was at his mother's house. They took photographs of the victim's condition; he had been shot in the back.

**{¶20}** Detective Andrews then testified that they found video surveillance at the appellant's residence. It shows the victim attempting to enter the house. The video shows the victim entering the house. It shows the victim with the appellant. It shows the victim running from the house just after the shots were fired, with the appellant watching him and holding a firearm.

**{¶21}** Detective Andrews then testified to messages pulled from the appellant's phone between the appellant and the victim. The appellant told the victim he was lucky to be allowed to run away. The victim said he respected the appellant for actually pulling the trigger. The appellant said that he needs to be paid and that if he handles the "Somers thing," they would be "square." There was also a picture of the appellant in the messages with his finger to his lips, "shushing" the victim.

**{¶22}** The appellant also had messaged other individuals, C.S. and M.Y., on his phone. Detective Andrews testified the messages referenced a transaction for the purchase of fentanyl and possibly other narcotics.

**{¶23}** The appellant wrote a letter addressed to Detective Andrews in which he apologized for his behavior. He plans on living a peaceful life when he leaves custody. He hopes the detective has learned he is not a bad man and does his best to help others. He ends by apologizing for his actions.

**{¶24}** During cross-examination, the detective testifies that the appellant does not own the residence where he is staying. The appellant's mother and aunt own the house, but the appellant is in charge of it. The Nike bag containing firearms and narcotics also had a Crown Royal bag full of coins. The appellant buys and sells coins, cards, and other memorabilia.

**{¶25}** The State then rested its case.

**{¶26}** The appellant moved to dismiss the Tampering with Evidence charge along with both Robbery charges.

**{¶27}** The trial court denied the appellant's motion to dismiss the Tampering with Evidence charge but dismissed the Robbery charges.

**{¶28}** On the remaining charges, trial court found the appellant guilty of Possession of Fentanyl-Related Compound in violation of R.C. 2925.11(A), Trafficking in a Fentanyl-Related Compound in violation of R.C. 2925.03(A)(2), Aggravated Possession of Drugs (Methamphetamine) in violation of R.C. 2925.11(A), Aggravated Trafficking in Drugs (Methamphetamine) in violation of R.C. 2925.03(A)(2), Aggravated Possession of Drugs (Methylphenidate) in violation of R.C. 2925.11(A), Aggravated Trafficking in Drugs (Methylphenidate) in violation of R.C. 2925.03(A)(2), Illegal Assembly or Possession of Chemical for the Manufacture of Drugs in violation of R.C. 2925.041(A), Felonious Assault in violation of R.C. 2903.11(A)(1), and Felonious Assault in violation of R.C. 2903.11(A)(2). The trial court found the appellant not guilty of Tampering with Evidence in violation of R.C. 2921.12(A)(1).

**{¶29}** The appellant filed a timely notice of appeal and herein raised the following three assignments of error:

**{¶30}** "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BECAUSE SCHILLING DID NOT PROPERLY WAIVE HIS RIGHT TO A JURY TRIAL."

**{¶31}** "II. THE STATES EVIDENCE THAT SCHILLING POSSESSED AND TRAFFICKED THE DRUGS HE WAS CHARGED FOR (COUNTS ONE THROUGH SIX),

AND THE FIREARM SPECIFICATION ATTACHED TO THOSE COUNTS WAS LEGALLY INSUFFICIENTLY (sic) AS A MATTER OF LAW."

**{¶32}** "III. BECAUSE THE EVIDENCE WEIGHED MANIFESTLY AGAINST CONVICTING SCHILLING OF POSSESSING OR TRAFFICKING THE DRUGS FOUND IN THE NIKE BAG, AND OF THE ATTACHED FIREARM SPECIFICATIONS, HIS CONVICTION SHOULD BE REVERSED."

**{¶33}** On January 28, 2025, the appellant withdrew his first assignment of error, leaving only assignments of error two and three for this Court to consider.

## II., III.

**{¶34}** In the appellant's second and third assignment of error, the appellant argues his convictions for possession and trafficking of drugs, along with the firearm specifications, were based on insufficient evidence and against the manifest weight of the evidence. We disagree.

## STANDARD OF REVIEW

**{¶35}** Sufficiency of the evidence was addressed by the Ohio Supreme Court in *State v. Worley*, 2021-Ohio-2207:

> The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443

U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). " 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio st.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶219.

*Id.* at ¶57. Thus, a review of the constitutional sufficiency of evidence to support a criminal conviction requires a court of appeals to determine whether; after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

{¶36} Manifest weight of the evidence, on the other hand, addresses the evidence's effect on inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith*, 1997-Ohio-355. The Court stated:

…Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis added.) Black's, *supra*, at 1594.

(Italics original.) *Id.* at 387. The Court stated further:

> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs [v. Florida]*, 457 U.S. [31] at 42, 102 S.Ct. [2211] at 2218, 72 L.Ed.2d [652] at 661 [(1982)]. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id.*

**{¶37}** Finally, "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. "* * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1272 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).

**ANALYSIS**

**{¶38}** With respect to the appellant's second and third assignments of error, the appellant was convicted of Possession of Fentanyl-Related Compound in violation of R.C. 2925.11(A), Trafficking in a Fentanyl-Related Compound in violation of R.C. 2925.03(A)(2), Aggravated Possession of Drugs (Methamphetamine) in violation of R.C. 2925.11(A), Aggravated Trafficking in Drugs (Methamphetamine) in violation of R.C. 2925.03(A)(2), Aggravated Possession of Drugs (Methylphenidate) in violation of R.C. 2925.11(A), and Aggravated Trafficking in Drugs (Methylphenidate) in violation of R.C. 2925.03(A)(2) with related firearm specifications on each count in violation of R.C.2941.145(A).

**{¶39}** R.C. 2925.11(A) states, "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

**{¶40}** R.C. 2925.03 states, in pertinent part:

(A)    No person shall knowingly do any of the following:

\*\*\*

Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

**{¶41}** In the case *sub judice*, testimony showed that the appellant lived at and was in charge of the residence on Forest Ave. He had numerous messages on his phone

discussing the sale of fentanyl and other controlled substances. During a search of the residence, law enforcement discovered multiple operable firearms, fentanyl, methamphetamine, and methylphenidate. The controlled substances were found in a Nike bag with a bag full of coins. The appellant sells coins and other memorabilia. Other individuals' credit or debit cards were found in the Nike bag. One of the appellant's customers testified he buys drugs from the appellant. The appellant's girlfriend testified she obtained drugs from the appellant because she knew he was carefully cutting the drugs so people would not overdose. This Court must take the evidence in the light most favorable to the prosecution, and "every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts" when analyzing sufficiency of the evidence and manifest weight of the evidence claims. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d at 80. Accordingly, we find that there was sufficient evidence, when viewed in the light most favorable to the prosecution, to support the convictions for possession and trafficking of drugs, along with the firearm specifications. Our review of the entire record, taking into account every reasonable intendment and every reasonable presumption in favor of the findings of fact and judgment, fails to persuade us that the jury lost its way and created a manifest miscarriage of justice. The appellant was not convicted against the manifest weight of the evidence.

## CONCLUSION

{¶42} For the foregoing reasons, the judgment of the Court of Common Pleas of Muskingum County, is hereby affirmed.

By: Baldwin, P.J.

Hoffman, J. and

King, J. concur.